**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| RHYAN J.,[1] | : | Case No. 3:21-cv-00156 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ORDER**

---

## I.    INTRODUCTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental

Security Income in November 2016. Plaintiff's claims were denied initially and upon

reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge

(ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a

"disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's

request for review, vacated the ALJ's decision, and remanded the case to the ALJ for

resolution of several issues. Upon remand, the ALJ held a second hearing and issued a

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

written decision, again concluding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court upon Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 15), Plaintiff's Reply (Doc. 16), and the administrative record (Doc. 8).

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since August 26, 2014. At that time, she was twenty-three years old. At the time of the second administrative decision, she was thirty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d); 20 C.F.R. § 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 44-60), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 15), and Plaintiff's Reply (Doc. 16.) Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a); 42 U.S.C. §§ 402(e), 402(e)(B)(ii). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

3

(citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means - and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

4

Step 1:        Plaintiff has engaged in substantial gainful activity since August 26, 2014, the alleged onset date.

However, there has been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. The remaining findings address the period(s) Plaintiff did not engage in substantial gainful activity.

Step 2:        She has the severe impairments of autism spectrum disorder, anxiety/dependent personality disorder, and sensory disorder.

She has the following nonsevere impairment: fine motor skill coordination.

Step 3:        She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:        Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a full range of exertional work subject to the following nonexertional limitations: "(1) no loud environments (level 3 per Dictionary of Occupational Titles (DOT)); (2) performing simple, routine tasks; (3) no jobs at production-rate pace or with strict performance quotas; (4) occasional interaction with supervisors and coworkers; (5) no interaction with the general public; and (6) occasional changes to a routine work setting defined as 1-2 per week."

She is unable to perform her past relevant work.

Step 5:        Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-2, PageID 47-59.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 59.)

5

**B.       Treating Physician Glenda Lopez-Blaza, M.D.**

Family physician Dr. Glenda Lopez-Blaza began treating Plaintiff in February

2016. (Doc. 8-7, PageID 590.) In January 2017, Dr. Lopez-Blaza completed a Mental

Status Questionnaire at the request of the disability agency. (*Id.* at PageID 584-88.)  Dr.

Lopez-Blaza stated that Plaintiff's appearance, mood, and orientation were normal and

that she had severe anxiety in stressful situations. (*Id.* at PageID 584.) Dr. Lopez-Blaza

wrote "see attached papers" in several places (*id.* at PageID 584-85, 587), which

presumably referred to treatment notes that immediately follow the questionnaire. (*Id*. at

PageID 589-90.) A note dated February 11, 2016 states: "New patient has severe anxiety

has been diagnosed since 3 or 4 years old." (*Id*. at PageID 590.) A note dated December

8, 2016 states: "need referral psychologist & neurologist; severe anxiety; social delays;

developmental disorder; obsessive compulsive disorder." (*Id*. at PageID 589.)

On December 11, 2018, Dr. Lopez-Blaza completed a different questionnaire in

connection with Plaintiff's application for Social Security Disability benefits. (Doc. 8-7

at PageID 654-60.) She stated that she treated Plaintiff for generalized anxiety disorder

and obsessive-compulsive disorder. (*Id.* at PageID 655.)

Dr. Lopez-Blaza checked a box stating that in her opinion, Plaintiff would not be

able to "[w]ithstand the pressure of meeting normal standards of work productivity and

work accuracy without significant risk of physical or psychological decompensation or

worsening of her physical and mental impairments."  due to her anxiety, concentration,

and inability to think rationally in a timely manner. (Doc. 8-7, PageID 655.) As support

6

for her opinion, she explained that Plaintiff is "very anxious and unable to concentrate, and think rationally in a timely manner." (*Id*.)

Dr. Lopez-Blaza checked a box stating that in her opinion, Plaintiff would not be able to demonstrate reliability. (Doc. 8-7, PageID 655.) As support for her opinion, she explained that Plaintiff is "unable to complete work at allotted time." (*Id*.)

Dr. Lopez-Blaza checked a box stating that in her opinion, Plaintiff would not be able to "[c]omplete a normal work day and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods." (Doc. 8-7, PageID 656.) She explained that Plaintiff is "very anxious and unable to think and perform tasks at [sic] a timely manner." (*Id*.)

Dr. Lopez-Blaza limited Plaintiff to sitting for fifteen minutes at a time and 2 hours total during an eight-hour workday. (Doc. 8-7, PageID 657.) She explained that this limitation is required because Plaintiff has generalized anxiety disorder and is "unable to be in one position for a period of time." (*Id*.) She did not identify limitations in Plaintiff's ability to stand, walk, lift or carry. (*Id*. at PageID 656-57.) In weighing Dr. Lopez-Blaza's opinions, the ALJ determined:

> [N]o weight has been afforded to a mental status questionnaire submitted by [Plaintiff]'s physician, Glenda Lopez-Blaza, M.D. in January 2017 (Exhibit 2F at 4). Beyond noting [Plaintiff]'s presentation as well-kept, alert and fully-oriented, and appropriate, the remainder of Dr. Lopez-Blaza's assessment references "see attached notes."
>
> Dr. Lopez-Blaza did submit another assessment in December 2018 (Exhibit 5F) in which she diagnosed [Plaintiff] with OCD and anxiety resulting in

7

symptoms poor concentration, delayed task performance, and difficulty thinking. Dr. Lopez-Blaza also found [Plaintiff] is unable to sit longer than 2 hours for 15 minutes at a time in an 8-hour workday due to generalized anxiety. She has hearing and speaking limitations for the same reason. Dr. Lopez-Blaza also imposed safety and environmental limitations to account for [Plaintiff]'s preoccupations. The claimant is unable to hold any and all employment because of her mental impairments according to Dr. Lopez-Blaza.

As a treating (and medically acceptable) source as a primary care physician, Dr. Lopez-Blaza's assessment would, under the "treating source" regulations (see the details of those regulations at above) be entitled to the greatest weight. However, in applying the regulations, the undersigned finds that this opinion evidence is not entitled to controlling or deferential weight but is instead afforded little weight. Dr. Lopez-Blaza's blanket statement about [Plaintiff]'s unemployability is vague failing to provide specific details as to the potential range of functional limitations associated with symptoms of [Plaintiff]'s mental disorders. Beyond imposing a hearing limitation due to [Plaintiff]'s sensory disorder, the restrictions that are suggested by Dr. Lopez-Blaza are not consistent with the medical record or [Plaintiff]'s work history. For example, [Plaintiff] has only "mildly" atypical difficulties with psychomotor agitation, i.e. fidgetiness (Exhibit 2F at 27). And despite [Plaintiff]'s "asocial and fantasy" preoccupations (Exhibit 12F at 14), communication - including [Plaintiff]'s ability to express herself through speech - is a "relative strength" (Exhibit 12F at 7). She apparently has had some friends in the past (Exhibit 4F at 3) and is able to function socially in nonstressful situations when interaction is minimal and nonconfrontational as evidenced by her regularly spending time with family and successfully working in jobs requiring some degree of contact with others (see, e.g. Exhibit 4F at 3). Thus, the record demonstrates that both [Plaintiff]'s anxiety and autism spectrum symptoms are of no more than moderate-level severity. For this reason, Dr. Lopez-Blaza's assessment is entitled to little weight.

(Doc. 8-2, PageID 51.)

8

### C.      Consultative Examiner Katherine Myers, Psy.D.

Plaintiff was examined by clinical psychologist Katherine Myers, Psy.D. for

disability purposes in March 2017. (Doc. 8-7, PageID 648-52.) Plaintiff reported that she

has severe anxiety and OCD. (*Id*. at PageID 648.) She has a history of picking at her lips

and skin when she is "super nervous," is fearful of noises, balloons, motorcycles, and is

unable to walk on a busy street. (*Id*.)  Plaintiff worked as a food server for two years but

quit because of scheduling issues, not getting the hours she wanted, and anxiety. (*Id.* at

PageID 649.) Plaintiff's father reported that she has difficulty with money management

and maintaining a routine and has to be told to perform hygiene activities. (*Id.* at PageID

650.) Plaintiff reported minimal socialization with others and spent an excessive amount

of time playing electronic games. (*Id*. at PageID 649.)

On mental status examination, Plaintiff presented as adequately dressed and

groomed. She was cooperative and interacted appropriately with adequate eye contact,

motivation, and understanding of the purpose of the evaluation. Her speech was normal

and 100% understandable. Her thought processes were logical, coherent, and goal-

directed. Her mood was "mildly" anxious and she appeared nervous. Dr. Myers found no

evidence of thought content abnormalities. (Doc. 8-7, PageID 650-51.)

 Dr. Myers opined that Plaintiff "is likely to have no significant difficulties with

job-related tasks due to her mental health problems." (Doc. 8-7, PageID 651.) She opined

that because of her anxiety, Plaintiff may have a slower work pace than her peers and is

"somewhat likely to show a pattern of periods of time away from work." (*Id.* at PageID

652.) Dr. Myers opined that Plaintiff "is likely to respond appropriately to coworkers in a work setting." (*Id.*) She opined that Plaintiff is "somewhat able to respond appropriately to work stressors and situations," and "would likely perform better in situations where she had to work with the public minimally and could work at her own pace." (*Id.*).

In weighing Dr. Myers' opinion, the ALJ determined:

> The [ALJ] has considered Dr. Myers' assessment and finds it is entitled to partial weight. She diagnosed [Plaintiff] with a mental health disorder that could reasonably [affect] [Plaintiff]'s social functioning abilities yet Dr. Myers imposed only one social limitation. Further, her conclusion about [Plaintiff]'s likely absenteeism is inconsistent with evidence that [Plaintiff] subsequently worked at and very near SGA levels.

(Doc. 8-2, PageID 49.)

### D.    Consultative Examiner Anthony Rivers, Psy.D.

Plaintiff underwent a neuropsychological evaluation with Dr. Rivers in February 2019. (Doc. 8-7, PageID 745-58.) She was anxious about the assessment and her speech was pressured and anxious at times, but she was friendly, trusting, and cooperative. Rapport was established and maintained. Her speech was clear and intelligible. Psychometric testing results from the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) were as follows: verbal comprehension of 100 and perceptual reasoning of 104 indicating average skills; working memory of 80 and processing speed of 81 suggesting below-average skills; and full-scale IQ (FSIQ) of 100 indicating an average range of intelligence. (*Id.* at PageID 746-47.) Dr. Rivers assessed Plaintiff with a dependent personality disorder and anxiety disorder. (*Id.* at PageID 756.) He concluded that Plaintiff's moderate symptoms of anxiety and borderline clinical depression are

likely to cause some daily functional limitations. He recommended therapy and psychopharmacological treatment. (*Id.* at PageID 756-57.)

Plaintiff was again evaluated by Dr. Rivers in February 2020 to determine whether she is on the autism spectrum. (Doc. 8-7, PageID 789-96.) Plaintiff exhibited a flat affect and low energy level. At times, eye contact during conversation was poor, and speech was not spontaneous. However, she maintained overall satisfactory effort with intelligible speech, and she was pleasant and cooperative. Based on this assessment, Dr. Rivers diagnosed autism spectrum disorder. He concluded that Plaintiff largely displays delays in the areas of communication and social interaction and recommended some specific behavioral changes. (*Id.* at PageID 795-96.)

The ALJ afforded Dr. Rivers' opinions "partial weight," explaining: "Beyond stating that [Plaintiff] should have no difficulties with retaining information and detailing [Plaintiff]'s social interaction challenges, neither assessment includes specific findings as to [Plaintiff's] potential functional limitations." (Doc. 8-2, PageID 49-50.)

### E.  Meri Jo Warner, L.I.S.W.

Licensed independent social worker Meri Jo Warner completed questionnaires on behalf of the agency on February 7, 2017. (Doc. 8-7, PageID 642-644.) Ms. Warner saw Plaintiff from October 7, 2014 to February 10, 2015. (*Id.* at PageID 643.) She stated that Plaintiff exhibits Asperger's/autism symptoms and has general and social anxiety disorders. These impairments cause a "poor" ability to understand, remember, and follow directions, and to maintain attention, concentration, and pace persistence. Ms. Warner

11

listed Plaintiff's symptoms as poor personal hygiene, panic attacks, tic-like behaviors, confusion, low intelligence/logic skills and limited insight/judgement. She has no friends relates well with family and can get along with coworkers. (*Id.*) Ms. Warner opined that Plaintiff is unable to adapt to workplace stress.

> In weighing Ms. Warner's opinion, the ALJ determined:

> [The ALJ] finds that Ms. Warner's assessment is not entitled to controlling or deferential weight. Social workers are not included among the acceptable sources of medical evidence defined in the regulations (20 CFR 404.1513 and 416.913). Therefore, information offered by such providers does not equal in probative value reports from those medical sources shown as being acceptable such as licensed psychologists or psychiatrists (20 CFR 404.1513, 404.1527, 416.913 and 416.927). Further, at the time Ms. Warner offered her opinion, she had not treated [Plaintiff] for 2 years and [Plaintiff] "frequently" missed sessions which is perhaps the reason that her assessment does not include any potential functional limitations. During that period (and after), [Plaintiff] was able to engage in a number of routine daily living tasks including working which is inconsistent with Ms. Warner's conclusion that [Plaintiff] is unable to handle the pressures of any and all work settings. Thus, only partial weight has been afforded to this opinion evidence.

(Doc. 8-2, PageID 50.)

**F.     State Agency Reviewing Psychologists Patricia Kirwin, Ph.D. and Robyn Murry-Hoffman, Ph.D.**

State agency reviewing psychologists Patricia Kirwin, Ph.D. and Robyn Murry-Hoffman, Ph.D. opined that Plaintiff could apply instructions requiring low average to average intelligence, was "somewhat likely to show a pattern of periods of time away from work for mental health reasons as she quit her last position," and was capable of performing simple and multi-step tasks that did not require a fast pace. (Doc. 8-3, PageID 121-35, 136-49, 154-66, 167-79.) Both psychologists found that Plaintiff could respond

appropriately to co-workers and supervisors, while working with the public minimally. They opined that Plaintiff would "need major changes to a present routine previewed and gradually introduced to allow time to adjust to the new expectations." (*Id.*).

In weighing the state agency opinions, the ALJ determined:

The assessments of the DDD reviewing psychologists are only given partial weight. Their suggestion that [Plaintiff] can perform at least simple, routine tasks with no fast-pace demands and minimal social interactions are consistent with evidence of [Plaintiff]'s mental acuity and have been incorporated in the residual functional capacity discussed herein. Drs. Kirwin and Murry-Hoffman also indicated that [Plaintiff] can only work in settings in which changes are introduced slowly and explained, which has been interpreted as performing in a routine work setting with only occasional changes, i.e. 1-2 per week. As such, when considered together, these restrictions are sufficient to ensure that any tasks which [Plaintiff] would be compelled to adapt to as part of her actual job duties would be sufficiently gradual with a minimal level of change.

(Doc. 8-2, PageID 52.)

## V.     LAW AND ANALYSIS

Plaintiff argues that the ALJ reversibly erred by failing to give controlling or deferential weight to the opinion of treating physician Dr. Lopez Blaza. (Doc. 11, PageID 805-09.) Plaintiff further argues that the ALJ did not assign proper weight to the opinions of consultative psychologist Dr. Katherine Myers, consultative psychologist Dr. Anthony Rivers, treating social worker Meri Jo Warner, and reviewing psychologists Drs. Kirwin and Murry Hoffman. (*Id*. at PageID 809-12.) Finally, Plaintiff argues that the ALJ improperly acted as his own medical expert. (*Id*. at PageID 812-13.)

These arguments are not well-taken. With one exception, the ALJ complied with the applicable regulations when he decided to assign various weights to the medical opinions and prior administrative findings in the record. In addition, the ALJ did not improperly act as a medical expert but instead properly reviewed the medical evidence to determine whether Plaintiff is disabled, which is an issue reserved to the Commissioner. Therefore, the ALJ's decision must be affirmed.

### A.     Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v.*

14

*Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

The treating physician rule does not require ALJs to ignore inconsistencies between a treating source's opinion and the evidence in the record. Instead, an ALJ can "properly discount even a treating source opinion if the opinion is unsupported and inconsistent with other substantial evidence in the record." *Herndon v. Comm'r of Soc. Sec.*, Case No. 20-6094, 2021 U.S. App. LEXIS 15178, *15 (6th Cir. May 20, 2021).

If the treating physician's opinion is not controlling, then "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[3]. The goal is to make

---

[3] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after

15

clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*) The good reasons requirement cannot be satisfied with general and non-specific assertions of inconsistency with other evidence in the record. *Smalley v. Comm'r of Soc. Sec.*, __ Fed. Appx. __, Case No. 20-1865, 2021 U.S. App. LEXIS 26754, *14 (6th Cir. Sept. 3, 2021).

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 416.967(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 416.927(c).

The ALJ must also consider opinions from medical sources who are not "acceptable medical sources" and from nonmedical sources using the same factors listed in § 416.927(c), although "not every factor for weighing opinion evidence will apply in every case." 20 C.F.R. § 416.927(f)(1). Additionally, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2).

A claimant's residual functional capacity (RFC) is the most that she can do in a work setting despite physical and mental limitations caused by her "impairment(s), and

---

March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged

with the final responsibility for assessing a claimant's RFC and must base it on all

relevant evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1). Relevant

evidence includes "information about the individual's symptoms and any 'medical source

statements'—i.e., opinions about what the individual can still do despite his or her

impairment(s)—submitted by an individual's treating source or other acceptable medical

sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996). "If the RFC assessment

conflicts with an opinion from a medical source, the adjudicator must explain why the

opinion was not adopted." *Id*. at *2.

B.     **Although The ALJ Partially Erred In His Evaluation Of Dr. Lopez-
       Blaza's Opinions, The Error Is Harmless**

The ALJ assigned "no weight" to the January 2017 opinions of Dr. Lopez-Blaza,

explaining that "[b]eyond noting [Plaintiff]'s presentation as well-kept, alert and fully-

oriented, and appropriate, the remainder of Dr. Lopez-Blaza's assessment references 'see

attached notes.'" (Doc. 8-2, PageID 51.) This statement is not supported by substantial

evidence. In fact, Dr. Lopez-Blaza stated on the questionnaire that Plaintiff had severe

anxiety in stressful situations. (*Id.* at PageID 584.) The ALJ ignored this opinion. The

ALJ also ignored Dr. Lopez-Blaza's attached treatment notes (*id*. at PageID 589-90),

which supported her opinion. Thus, the ALJ's conclusion is erroneous.

Nevertheless, the Court finds that the error is harmless. Although the ALJ did not

credit Dr. Lopez-Blaza's opinion that Plaintiff has severe anxiety in stressful situations,

his findings are consistent with that opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 547 (6th Cir. 2004). The ALJ found that Plaintiff has the severe impairment of anxiety/dependent personality disorder. (Doc. 8-2, PageID 48.) The ALJ imposed the limitations of "performing only simple, routine tasks in a workplace with no public contact" to accommodate her "reduced stress tolerance." (*Id*. at PageID 57.) The ALJ also reduced Plaintiff's exposure to stressful workplace situations by limiting her to "no jobs at production-rate pace or with strict performance quotas," and to "occasional interaction with supervisors and coworkers." (*Id*. at PageID 55.) Thus, although the ALJ erred by giving no weight to Dr. Lopez-Blaza's January 2017 opinion, the error is harmless.

The ALJ did not err by giving little weight to Dr. Lopez-Blaza's December 2018 opinions. The Sixth Circuit has held that ALJs "need not afford significant or controlling weight" to treating source opinions that are "vague and unhelpful," do not identify supporting objective medical evidence, or require little more than checking a box. *E.g., Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). Here, although Dr. Lopez-Blaza provided brief explanations for her checkbox opinions, her explanations are vague and unsupported by objective medical evidence. Thus, the ALJ's decision to afford her opinions little weight is not erroneous.

18

### C. The ALJ Did Not Err In His Evaluation Of Dr. Myers' Opinions

Plaintiff argues that the ALJ erred by failing to credit Dr. Myers' opinion that Plaintiff is "somewhat likely" miss work due to her anxiety. (Doc. 11, PageID 810.) The ALJ explained that he did not give weight to this opinion because it is inconsistent with evidence that Plaintiff "worked at and very near SGA levels." (Doc. 8-2, PageID 49.) The ALJ properly considered whether Dr. Myers' opinion is consistent with other evidence in the record, and his conclusion is supported by substantial evidence. Therefore, the ALJ's conclusion is not erroneous.

### D. The ALJ's Evaluation Of Dr. Rivers' Opinions Is Not Challenged

Plaintiff does not challenge the ALJ's evaluation of Dr. Rivers' opinions. Instead, Plaintiff argues that Dr. Rivers' findings "serve to further demonstrate that the opinions of treating and examining physicians are accurate." (Doc. 11, PageID 810.) But the Court is not permitted to conduct a *de novo* review of the evidence. Because the Court's review is limited to determining whether the ALJ complied with the applicable law and whether substantial evidence supports his factual findings, no analysis of Dr. Rivers' opinions is necessary.

### E. The ALJ Did Not Err In His Evaluation Of Ms. Warner's Opinions

As a social worker, Ms. Warner is not an "acceptable medical source" as defined in 20 C.F.R. § 416.902(a). *See* SSR 06-03p, 2006 WL 2329939, *1 (Aug. 9, 2006); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n.9 (6th Cir. 2016). She is also not a "treating source" under 20 C.F.R. § 416.927(a)(1), and her opinion is not entitled to controlling or

deferential weight. 20 C.F.R. § 416.927(c)(2); SSR 06-03p at *2. Nevertheless, she is a licensed healthcare worker and so is a "medical source" whose opinions are entitled to consideration by the Commissioner. 20 C.F.R. § 416.927(f); SSR 06-03p at *2-3.

The ALJ gave Ms. Warner's opinions partial weight, explaining that she provided her opinions two years after treatment ended, Plaintiff frequently missed appointments, and the opinions were inconsistent with evidence that Plaintiff subsequently was able to work. (Doc. 8-2, PageID 50.) This analysis complied with the applicable legal framework and these findings are supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in his evaluation of Ms. Warner's opinions.

### F. The ALJ Did Not Err In His Evaluation Of The Opinions Of Dr. Kirwin And Dr. Murry-Hoffman

The ALJ largely incorporated the limitations identified by Dr. Kirwin and Dr. Murry-Hoffman. Plaintiff argues that the ALJ erred because no jobs exist that can satisfy these reviewers' requirement that "major changes to a present routine [be] previewed and gradually introduced to allow time to adjust to the new expectations." (Doc. 11, PageID 812.) But the ALJ did not adopt this proposed restriction. Instead, he explained that he accounted for this limitation in a different way: "Drs. Kirwin and Murry-Hoffman also indicated that [Plaintiff] can only work in settings in which changes are introduced slowly and explained, which has been interpreted as performing in a routine work setting with only occasional changes, i.e. 1-2 per week." (Doc. 8-2, PageID 52.)

The Court finds that the ALJ adequately accounted for the limitation identified by Dr. Kirwin and Dr. Murry-Hoffman. Moreover, even if the ALJ had not adequately

accounted for all the limitations proposed by the state agency reviewers, "there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio, Jan. 16, 2020) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015)). Thus, the ALJ did not err in his evaluation of these reviewers' opinions.

### G. The ALJ Did Not Improperly Act As A Medical Expert

The ALJ did not improperly act as a medical expert. The regulations require ALJs to evaluate the medical evidence to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.945(a)(3); *Webb v. Comm'r of Soc. Se*c., 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x. 435, 439 (6th Cir. 2010) ("[T]he ALJ— not a physician—ultimately determines a claimant's RFC . . . . An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."). That is precisely what the ALJ did here.

## VI. CONCLUSION

In sum, except for one harmless error, the Court finds that the ALJ complied with the applicable legal framework. The Court further finds that the ALJ's conclusions are supported by substantial evidence. Plaintiff's contrary arguments are not well-taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 11) is OVERRULED;

21

2.      The Court AFFIRMS the Commissioner's non-disability determination; and

3.      The case is terminated on the Court's docket.


                                        */s/ Caroline H. Gentry*
                                        Caroline H. Gentry
                                        United States Magistrate Judge